Humberto Almazo HOYOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–00916–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 7, 1997.

---

504

Jodith M. Prince, Houston, for appellants.

Carol M. Cameron, Houston, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

YATES, Justice.

Appellant, Humberto Almazo Hoyos, appeals his aggravated robbery conviction. In seven points of error, he contends that the evidence is legally and factually insufficient to support the verdict and that the trial court erred by 1) prohibiting him from cross-examining the complainant as to motive, bias, or interest, 2) denying his motion for new trial, 3) entering an affirmative finding of a deadly weapon, and 4) denying appellant's motion to require disclosure of informants. We affirm.

### Background

The fifty-eight year old complainant, Manuella Ramirez, lived in an apartment on Glenmont Street, in Houston, Texas. On November 17, 1994, during the early morning hours, the complainant and some family members were asleep when four men forced entry into the apartment.

At trial, the complainant identified the appellant as one of the men. She testified that appellant immediately approached her after the men entered the apartment and demanded to know "where is the money?" She also testified that appellant hit her with his revolver several times, threatened to kill her, and shot her once in the right thigh. Other members of the family were also assaulted by the intruders.

Based on information from an informant, the police arrested appellant and his brother and charged them with aggravated robbery. They were tried in one proceeding, and the jury found them both guilty. The jury assessed appellant's punishment at twenty-five years confinement and a fine of $6000.00. This appeal followed.

### Confrontation Clause

In his first point of error, appellant contends the trial court denied his right to confrontation under the Sixth Amendment of the United States Constitution by prohibiting him from cross-examining the complaining witness regarding motive, bias, or interest.

Specifically, he contends the trial court erred by preventing him from questioning the complainant about 1) her reputation as a drug dealer, 2) her deferred adjudication probation status, and 3) her retention of a lawyer to pursue a civil claim against the apartment complex where the robbery took place.

■ The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17, 94 S.Ct. at 1110. The accused is entitled to great latitude to show a witness's bias or motive to falsify his testimony. *Hodge v. State,* 631 S.W.2d 754, 758 (Tex.Crim.App. [Panel Op.] 1982). As a recent decision from the Court of Criminal Appeals stated:

> ... Evidence to show bias or interest of a witness in a cause covers a *wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite.* The rule encompasses *all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony* for the purpose of helping to establish one side of the cause only.

*Carroll v. State,* 916 S.W.2d 494, 497–98 (Tex. Crim.App.1996) (plurality opinion).

■ The extent of this cross-examination, however, is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *Hodge,* 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.; see also Chambers v. State,* 866 S.W.2d 9, 27 (Tex.Crim. App.1993), *cert. denied,* 511 U.S. 1100, 114

S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Castillo v. State*, 939 S.W.2d 754, 758 (Tex.App.—Houston [14th Dist.] 1997, pet ref'd); *McKee v. State*, 855 S.W.2d 89, 91 (Tex.App.—Houston [14th Dist.] 1993, no pet.).

If the trial court has excluded evidence in violation of the Confrontation Clause, we must conduct a three prong harmless error analysis to determine whether the exclusion of the evidence warrants reversal of the conviction. First, we assume that the damaging potential of the cross-examination was fully realized. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App. 1991). Second, we review the error in connection with the following factors:

1) the importance of the witness's testimony in the prosecution's case;

2) whether the testimony was cumulative;

3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

4) the extent of cross-examination otherwise permitted; and,

5) the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *Shelby*, 819 S.W.2d at 547. Finally, we determine if the error was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *Shelby*, 819 S.W.2d at 547.

*Waiver*

Before addressing the merits of the appeal, we first consider the State's waiver argument. The State argues appellant failed to preserve error because appellant did not specifically object on constitutional grounds and did not establish a sufficient record. We disagree.

The trial court considered the three cross-examination issues together outside the presence of the jury in two separate hearings. In both hearings, appellant urged his objection "under the authority of" *Van Arsdall* and *Davis*. These are key decisions by the United States Supreme Court interpreting the Sixth Amendment's Confrontation Clause. To preserve error a party must simply "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App.1992). Perhaps appellant could have objected more specifically, but we do not conclude his complaint on appeal differs from his complaint below.

The State next argues that appellant failed to create a sufficient record. Generally, to complain of excluded evidence, the party must make an offer of proof or an informal bill of exceptions to establish the substance of the evidence. TEX.R.APP. P. 52(b). However, the law does not require the offer of proof to show what *specific* facts the cross-examination would reveal when objecting to the exclusion of evidence that the witness had malice, ill feeling, ill will, bias, prejudice, or animus towards appellant. *Koehler v. State*, 679 S.W.2d 6, 10 (Tex.Crim. App.1984). Instead, appellant must "establish what subject matter he desired to examine the witness about during the cross-examination." *Id.; see also Carroll*, 916 S.W.2d at 497 ("[T]he defendant should be granted a wide latitude even though he is unable to state what facts he expects to prove through his cross-examination."). Here, appellant clearly informed the trial court of the subject matter he wished to cross-examine the complainant about.

*Reputation as a Drug Dealer*

Appellant sought to cross-examine appellant as to her reputation as a drug dealer. He claims this evidence was relevant to show the complainant was robbed by someone, other than himself, who knew she was a drug dealer and knew she possessed money from the sale of the drugs. Appellant also points out that trial testimony showed drug charges were brought and dismissed against the complainant's daughter, Martha. Appellant argues that because the drug charges could have been refiled, her daughter's status added to the complainant's vulnerable position due to her interest in protecting her daughter. The trial court concluded this evidence was not relevant.

Even if the complainant were a drug dealer, it has very little bearing on appellant's guilt—appellant still could have been involved in the robbery. On the other hand, admission of this evidence would introduce bias and might confuse the issue of appellant's guilt. Thus, the trial court did not err by excluding evidence of the complainant's reputation as a drug dealer.

*Deferred Adjudication*

■ Appellant also sought to question the complainant about her deferred adjudication probation for an unrelated drug offense. Appellant argues this questioning was proper because her deferred adjudication status would tend to show her vulnerability to State influence as a possible bias or motive for testifying.

■ Cross-examination into a witness's pending criminal charges is an appropriate inquiry to demonstrate a witness's potential motive, bias, or interest to testify for the State. *Carroll*, 916 S.W.2d at 500. However, the Court of Criminal Appeals has drawn a distinction between deferred adjudication and pending charges. "[D]enying a defendant the right to impeach a witness on the basis of the witness' deferred adjudication probation does not deny the defendant his constitutional right of confrontation." *Jones v. State*, 843 S.W.2d 487, 496 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); *see also Duncan v. State*, 899 S.W.2d 279, 280–81 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). The trial court did not err by excluding this line of cross-examination.

*Subsequent Civil Suit*

■ Appellant also sought to impeach the complainant with the fact that she had retained a civil attorney apparently in an attempt to pursue a civil claim against the apartment complex where the robbery took place. The trial court considered the issue

outside the presence of the jury, found the issue to be immaterial, and refused to allow the proposed cross-examination.

We conclude the trial court did not err by denying appellant the right to cross-examine the complainant about her retention of an attorney. In reaching this conclusion, we have examined decisions on similar facts, some which suggest the questioning should have been allowed. However, we find these cases either are distinguishable or have used overly broad language in their holdings.

In *Shelby v. State*, 819 S.W.2d 544 (Tex. Crim.App.1991), the Court of Criminal Appeals determined what harmless error standard applied to evidence excluded in violation of the Confrontation Clause. The appellant in *Shelby* sought to question the complainant's mother about a lawsuit she brought against appellant and the corporate owners of the property where the offense occurred. *Id.* at 545.[1] The Court made clear that the trial court had erred in limiting the scope of appellant's cross-examination of the complainant's mother in an aggravated sexual assault case. *Id.; see also Davis v. State*, 831 S.W.2d 426, 442 (Tex.App.—Austin 1992, pet. ref'd) (applying *Shelby* ).

In an older decision by the Court of Criminal Appeals, the Court stated, "The fact that a witness has brought a civil suit against the defendant growing out of the same incident is admissible as tending to show bias and interest." *Cox v. State*, 523 S.W.2d 695, 700 (Tex.Crim.App.1975). In *Cox*, the appellant was convicted of unlawful sale of an unregistered security. *Id.* at 697. On appeal, he complained that the trial court did not allow him to introduce the civil petition of a state's witness who had invested in the unregistered security. *Id.* at 700. The appellant sought to show that this witness had asserted in a civil lawsuit that appellant had removed the profitable investments from the portfolio for his own self-gain. *Id.* The petition appellant relied upon as evidence of this claim was not

---

1. During the cross-examination of the witness, the witness denied having a lawsuit against the appellant, although this response was struck by the trial court. *Id.* at 549–50. However, the Court of Criminal Appeals held that it was "apparent from the record that the appellant wanted to question [the complainant's mother] about a lawsuit she brought two months after she reported the offense to the police *against the appellant* and the corporate owners of the property." *Id.* at 545 (emphasis added). Thus, we interpret the holding in *Shelby* as applying to cross-examination about civil suits in which the appellant is a party.

admitted by the trial court. *Id.* The Court held the trial court did not err by excluding the petition because the petition did not support the appellant's claim and because the "fact of filing of the civil law suit was before the jury." *Id.*

Both of these decisions suggest that the appellant should be allowed to cross-examine witnesses about the their civil suits arising out of the criminal offense. However, we note that in both *Shelby* and *Cox*, the appellant was an actual party to the complainant's suit. In this case, the complainant apparently retained a lawyer to sue only the apartment complex. Appellant was apparently not contemplated as a party to that lawsuit. Because appellant was not a party to the lawsuit, any motive or bias the complainant might have in testifying against him was very slim. We find support for this distinction in two decisions from the Dallas Court of Appeals.

In *Deloney v. State*, 734 S.W.2d 6, 9 (Tex. App.—Dallas 1987, pet. ref'd), the appellant, who was convicted of aggravated robbery, argued he should have been allowed to cross-examine the complainant concerning his motive for testifying. *Id.* at 9. Specifically, appellant sought to question whether pictures of the complainant displaying injuries the complainant received during the robbery were taken to support a workers' compensation claim. *Id.* The court of appeals drew a distinction between civil claims asserted against the appellant and civil suits not including the appellant:

> Generally, a defendant is permitted to show that the complaining witness has brought a civil suit for damages based on the same occurrence for which the defendant is being prosecuted. However, the cases that have held such evidence to be admissible are limited to those circumstances where the complaining witness brings a collateral civil action against the accused.

*Id.* (citations omitted). The court of appeals held that because appellant's guilt or innocence was "wholly unrelated" to the success of the complainant's workers' compensation claim, the existence of the collateral civil action did not indicate improper motive, bias, or prejudice. *Id.*

Similarly, in *Frierson v. State*, 839 S.W.2d 841 (Tex.App.—Dallas 1992, pet. ref'd), the appellant, convicted of drug possession, argued the trial court erred by excluding his cross-examination of one of the arresting officers. *Id.* at 849–50. The appellant sought to show that the officer had a financial incentive in seeking a conviction because his department would receive a large sum· of money through a civil forfeiture suit after a successful conviction. *Id.* at 850. The court of appeals concluded the trial court did not err, reasoning that the officer gains "only indirectly, if at all," from any forfeited assets because he did not bring a corresponding civil suit against the appellant that might influence his testimony. *Id.* (citing *Deloney,* 734 S.W.2d at 9).

We believe the distinction applies to this case as well. The complainant's motive in seeking a conviction *against appellant* was indirect, if at all. Appellant concedes a robbery occurred; he simply contends he was not involved.[2] The central issue in the subsequent civil suit would revolve around whether a robbery occurred and whether the apartment complex was responsible, not who committed the robbery. The complainant might recover in a civil lawsuit against the apartment complex even if the State could not secure a criminal conviction *against appellant* for the robbery. Nor would proof that *appellant* committed the robbery automatically translate into a finding of negligence against the apartment complex. Furthermore, introduction of the civil lawsuit into the criminal trial would most likely require the parties to litigate issues relating to the civil suit (such as why she hired the lawyer, the amount of damages sought, the potential monetary interest from that suit, etc.). The introduction and development of this evidence has the potential to confuse the jury between the issues in the two cases. The trial court carefully considered the intro-

---

2. We also note that in *Shelby* the defendant attempted to show the offense of sexual assault had not occurred. The child complainant gave contradictory accounts of the incidents, and her mother and babysitter did not believe her initial outcry. *Shelby,* 819 S.W.2d at 551.

duction of this evidence, and we cannot say it erred in excluding this line of cross-examination.

Having reached this determination, it is also necessary for us to consider a decision from this Court, which would seem to contradict the reasoning above. In *Furgison v. State*, 800 S.W.2d 587 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd), this Court addressed whether the trial court erred by preventing the appellant from cross-examining the complainant about her civil suit. The appellant was convicted of robbing the complainant outside a Safeway store. *Id.* at 589. The complainant later filed a civil suit against the Safeway store. *Id.* The appellant argued that the lawsuit showed the complainant's bias because her chance of success in the civil action would improve if the appellant were convicted. *Id.* We held that the trial court improperly limited the scope of the appellant's cross-examination, but ultimately concluded the error was harmless. *Id.* at 591.

We believe the holding in *Furgison* is too broad. *Furgison* suggests that each defendant has an unlimited right to cross-examine a witness about a civil lawsuit initiated from the same set of circumstances as the purported criminal offense. Indeed, the decision focused only upon whether the appellant was provided an opportunity to cross-examine the witnesses against him. *See id.* ("When a defendant's right to ask a question on cross-examination is frustrated one of the safeguards essential to fair trial is also frustrated. This occurred in the instant case." (citation and internal quotation removed)). As discussed above, when deciding whether to admit or exclude this type of cross-examination, the trial court must carefully balance each defendant's right to confront the witnesses against him and weigh it against the risks associated with admission of the testimony, such as undue prejudice, embarrassment, confusion or delay. *Hodge*, 631 S.W.2d at 758. Therefore, each Confrontation Clause issue must be weighed on a case by case basis, carefully taking into account the

defendant's right to cross-examine and the risk factors associated with admission of the evidence.[3] Because our decision in *Furgison* did not consider those factors, we find the precedential value of the decision is limited.

In conclusion, we find that the probative value of the cross-examination appellant sought to solicit was very low and that introduction of the evidence could create confusion for the jury. The trial court carefully considered these risks factors and weighed them against appellant's right to confront the witnesses against him. We hold that the trial court did not err in excluding this line of cross-examination. We overrule appellant's first point of error.

*Claims under the Texas Constitution*

In the second point of error, appellant contends he was denied his constitutional right to confrontation provided by article I, section 10 of the Texas Constitution. Appellant argues that we should find that the Texas Constitution affords greater protections than that offered by the Federal Constitution. Specifically, he argues that we should adopt a *per se* reversible error rule and refuse to conduct a harmless error analysis. However, appellant has not pointed out any meaningful distinction between the confrontation clauses in the United States and Texas Constitutions. *See Lagrone v. State*, 942 S.W.2d 602, 614 (Tex.Crim.App.1997). We overrule the second point of error.

### Motion for New Trial

In his third point of error, appellant contends the trial court erred by denying his motion for new trial. In the motion, appellant presented the affidavit of Manuel Cristales, who was a key witness for the State and present the night of the aggravated robbery. In his affidavit, Cristales maintained that his testimony at trial was false. He claimed that, contrary to his trial testimony, he never saw appellant enter the apartment or rob the complainant. He explained that the complainant threatened him and that she would kill him if he did not offer the testimony he provided at trial. He indicated that he

---

**3.** For example, the Court in *Cox* determined that the petition the appellant sought to admit did not support appellant's claim and that the jury was

already aware of the lawsuit. *Cox*, 523 S.W.2d at 700.

wished to recant his testimony because he knew the complainant would send someone to kill him and he "want[ed] people to know the truth."

At the hearing on the motion for new trial, Cristales gave testimony similar to his sworn affidavit. The complainant also testified at the hearing. She testified that she never threatened Cristales or promised him money in exchange for his testimony. At the conclusion of the hearing, the trial court announced it would not grant the motion for new trial. The court explained:

> The record itself shows this was quite a tedious trial. It lasted some period of time and both of the lawyers did extensive cross-examination of the witnesses and, of course, my recollection of the trial is that Manuel Cristales was not the only person who provided the damning evidence against the defendant.
>
> I do not believe anything that Manuel Cristales said here in the courtroom today, and I therefore deny the motion for new trial for both of the defendants.

 Appellant contends the trial court should have granted the motion for new trial based on Cristales's recantation. Generally, when a witness testifies in a motion for new trial that he or she testified falsely in the trial, the trial court should grant the motion for new trial. *Williams v. State*, 375 S.W.2d 449, 451 (Tex.Crim.App. 1964). The trial court must examine the evidence presented at trial and must consider the truthfulness of the evidence presented in favor of the motion for new trial. *Id.* The credibility of the witnesses and the probable truth of the new evidence is primarily a determination for the trial court. *Id.; Ashcraft v. State*, 918 S.W.2d 648, 653 (Tex. App.—Waco 1996, pet. ref'd.). "Even where a recantation of testimony is made by the principal witness, a trial court is entitled to disbelieve that later statement and accept the earlier statement as true." *Banda v. State*, 727 S.W.2d 679, 682 (Tex.App.—Austin 1987, no pet.). An order denying a motion for new trial may only be reversed on appeal when there is a clear abuse of discretion. *Id.*

We do not find an abuse of discretion. We will not second guess the trial court's judg-ment concerning the credibility of the witnesses. *Id.* Moreover, in addition to Cristales's testimony, three other witnesses (the complainant, her son, and her daughter) made in-court identifications of appellant as one of the robbers on the night in question. *See Ashcraft*, 918 S.W.2d at 653 (finding no abuse of discretion if the recantation testimony is of questionable weight and credibility and would probably not bring about a different result upon a new trial). We overrule appellant's third point of error.

### Legal and Factual Sufficiency

In the fourth point of error, appellant contends the evidence is legally insufficient to support his aggravated robbery conviction. In the fifth point of error, appellant contends the evidence is factually insufficient to support his aggravated robbery conviction.

When reviewing the legal sufficiency of the evidence, we will review all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim.App.1993). In conducting this review, we will not re-evaluate the weight and credibility of the evidence; instead, we act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim.App.), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

When reviewing the factual sufficiency of the evidence, we will view all the evidence without the prism of "in the light most favorable to the prosecution" and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). This review must be appropriately deferential so as to avoid substituting this court's judgment for that of the jury. *Id.* at 133.

 The elements of aggravated robbery are: 1) a person 2) in the course of committing theft 3) with intent to obtain or maintain control of property 4) intentionally or know-

ingly 5) threatens another with, or places another in fear of, 6) imminent bodily injury or death and 7) uses or exhibits 8) a deadly weapon. TEX. PENAL CODE ANN. § 29.02–.03 (Vernon 1994); *Harper v. State*, 930 S.W.2d 625, 630 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Appellant contends the evidence is insufficient to prove the second element— that he was in the course of committing theft. Theft occurs when one unlawfully appropriates property with intent to deprive the owner of property. *Id.* § 31.03(a).

The evidence presented by the State shows that appellant forced entry into the complainant's house, immediately approached the complainant, displayed a firearm, and asked, "Where is the money?" Appellant argues that it was implausible for the robbers to have attacked the residents of the apartment for five to twenty minutes with none of the robbers making any attempt to look for money or any other property. Appellant also argues the State did not produce any evidence that the complainant was the owner of any money.

We disagree. Appellant's actions are sufficient to show that he intended to deprive the complainant of property. To prove aggravated robbery, the State was not required to prove that appellant committed a theft; rather it was required to show appellant was in the course of committing theft. Even if the complainant did not own any money, appellant was in the course of a theft. The evidence was legally sufficient to support appellant's aggravated robbery conviction. We overrule appellant's fourth point of error.

▮ In support of his factual insufficiency point, appellant argues that the State's witnesses made a number of contradictions about the events of the night in question. He suggests that if we disregard all the conflicting identification and other evidence, the remaining evidence only supports an aggravated assault, which was not an option available to the jury. Despite these contradictions, four witnesses—the complainant, her son, her daughter, and Manuel Cristales—all positively identified appellant as the person who had committed the aggravated robbery. Given this evidence, we cannot conclude the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. We overrule appellant's fifth point of error.

## Deadly Weapon Finding

▮ In the sixth point of error, appellant contends the trial court erred by making an affirmative deadly weapon finding. The indictment specifically alleged appellant used a deadly weapon. It stated:

[I]n Harris County, Texas, [appellant], on or about November 17, 1994, did then and there unlawfully, while in the course of committing theft of property owned by [the complainant] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [the complainant] in fear of imminent bodily injury and death, and the [appellant] did then and there *use and exhibit a deadly weapon, to-wit: a firearm.*

(emphasis altered). The indictment specifically referred to appellant and no other party as using the deadly weapon. The charge included an instruction on the law of parties, but also instructed the jury to find appellant guilty of aggravated robbery if *"the defendant* did then and there use or exhibit a deadly weapon, to-wit, a firearm." The jury found appellant guilty of aggravated robbery, as charged in the indictment, and the trial court entered an affirmative finding of a deadly weapon.

▮ "[I]f the indictment by allegation specifically places the issue before the trier of fact (i.e. ' .... by stabbing him with a knife, a deadly weapon ....'), then an affirmative finding is de facto made when the defendant is found guilty 'as charged in the indictment.' " *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985). However, when the jury is instructed on the law of parties, the affirmative finding must show that appellant himself used or exhibited the deadly weapon or knew that it would be used or exhibited. *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex.Crim.App.1985); *Pritchett v. State*, 874 S.W.2d 168, 172 (Tex.App.—Houston [14th Dist.] 1994, pet. dism'd, pet. ref'd).

We believe that the indictment and the charge sufficiently presented the deadly weapon issue to the jury. While the charge does refer to the law of parties, the portion of the charge relating to the use of a deadly weapon refers only to "the defendant." If the indictment specifically places the deadly weapon issue before the trier of fact then the jury de facto makes the affirmative finding when the defendant is found guilty as charged in the indictment. *Polk*, 693 S.W.2d at 394. The trial court did not err by entering an affirmative finding of a deadly weapon. We overrule appellant's sixth point of error.

### Disclosure of Informants

In his seventh point of error, appellant complains the trial court erred by denying his motion to require the disclosure of informants. Our record reveals that appellant filed a motion to compel the disclosure of the informants and to produce the informants in open court. The docket sheet indicates that the trial court considered the motion in camera and denied the motion. The docket sheet recites: "Mo to disclose heard before the court with an in camera inspection. Mo denied."

Rule 508 of the Rules of Criminal Evidence provides the State a privilege to refuse to disclose the identity of a person who has furnished information relating to an investigation of a violation of the law. TEX.R.CRIM. EVID. 508(a). The rule provides an exception if the trial court finds a reasonable probability that the informer can give testimony. Specifically, it states:

> *Testimony on Merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily

upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose his identity, the judge on motion of the defendant shall dismiss the charges to which the testimony would relate and the judge may do so on his own motion. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera, at which no counsel or party shall be permitted to be present.

TEX.R.CRIM. EVID. 508(c)(2).

The record reveals that the trial court considered the evidence during an in camera inspection, but our record does not contain the evidence reviewed by the trial court during this inspection. The burden is upon appellant to "see that a sufficient record is presented to show error requiring reversal." TEX.R.APP. P. 50(d). Without this evidence, we cannot conclude the trial court erred in its determination. We overrule appellant's seventh point of error.

The judgment of the trial court is affirmed.